

THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at GREENBELT

| | | |
|---|---|---|
| In re: | * | Case No.  16-24498-TJC |
| Sailing Emporium, Inc. | * | Chapter   11 |
|     Debtor | * | |
| * * * * * * * | | |
| William Arthur Willis and | * | Case No.  16-26458-TJC |
| Mary Sue Willis | * | Case No.  17-14376-TJC |
|     Debtors | * | Jointly Administered |
| * * * * * * * * * * * * * * | | |

## MEMORANDUM OF DECISION

Before the court is a motion filed by spouses William Arthur Willis and Mary Sue Willis, the debtors in two affiliated cases, to enforce Paragraph 15 of the order approving the sale of a marina to the Brawner Company, Inc. ("Brawner"). ECF 223 in Case No. 16-26458. Brawner opposes the motion. ECF 232 in Case No. 16-26458.

Brawner is the approved contract purchaser of a marina and the related assets from the Willises and from The Sailing Emporium, Inc. ("Sailing"), which itself is a debtor in Case No. 16-24498. The marina is operated on five parcels of real property. Three of the parcels are owned by the Willises and two are owned by Sailing. Therefore, all three bankruptcy estates

1

conducted the auction sale that led to the Brawner contract, and the sale was approved in all three bankruptcy cases.[1]

The parties dispute the meaning of Paragraph 15 of the order approving the sale, entered at ECF 235 in Case No. 16-24498 and ECF 190 in Case No. 16-26458 (the "Sale Order"). In a nutshell, the Willises' estates own Parcel 13, which sits along a cove of the Rock Hall Harbor adjacent to the marina but which was not included in the sale. The Willises contend that they agreed only that, as the owners of Parcel 13, they would not exercise the riparian rights of Parcel 13 so as to interfere with the operations of the marina. Brawner contends that, in Paragraph 15, the Willises agreed to transfer to it all of the riparian rights of Parcel 13, because those rights have been used in the operation of the marina for more than 30 years and are indispensable to the marina's operations.

The court held a hearing on the motion on November 20, 2017. For the reasons stated herein, the court rules in favor of Brawner and will deny the motion.

## Jurisdiction

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§1334(b) and 157(a) and Local Rule 402 of the United States District Court for the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A),(M), (N), & (O), as well as the inherent authority of this court to interpret its own orders.

## Findings of Fact

On November 1, 2016, Sailing filed for chapter 11 bankruptcy relief, initiating Case No. 16-24498. Sailing is a Maryland corporation and has its principal place of business at 21144 Green Lane, Rock Hall, Maryland. It owns and operates a full service marina on Rock Hall

---

[1] The Willises cases are jointly administered under Case No. 16-26458.

Harbor in Rock Hall, Maryland.  Sailing's business includes leasing some 155 deep water slips and 20 transient slips, boat sales, boat repair and restoration, electronics sales and service, sailboat charters, and winter boat storage.  It also has a marine store and a nautical gift shop.

Sailing is owned 100% by the Willises.  William Willis serves as the president of Sailing.  On December 16, 2016, he filed for chapter 11 bankruptcy relief initiating Case No. 16-26458.  Mary Sue Willis, who is seriously ill, filed for chapter 11 relief on March 27, 2017, initiating Case No. 17-14376.

Sailing filed its petition to stay a foreclosure sale by The Peoples Bank, which holds consensual and confessed judgment liens against Sailing's assets.  The bank also holds consensual and confessed judgment liens against various assets of the Willises. The amount due to the bank under the various loans is approximately $2.4 million.

The Willises and Sailing (collectively the "Debtors") determined that they should conduct an orderly sale of the marina to maximize its value and pay the bank.  On July 17, 2017, the Debtors filed a joint motion for an order approving the sale of the marina.  ECF 164 in Case No. 16-24498 and ECF 135 in Case No. 16-26458.  As the sale motion states, the marina consists of five parcels of real property.  *Id.* at ¶9.  Parcels 23 and 69 are owned by Sailing.  *Id.*  Parcels 120, 141, and 142 are owned by the Willises.  *Id.*  The sale motion states: "In addition, there is development property surrounding the Marina owned by the Willises, Parcels 13 and 146, that is excluded from this sale."  *Id.*  Approval of the sale was required in all three bankruptcy estates.

Contemporaneously with the sale motion, the Debtors filed a joint motion for an order to approve bid procedures, and authorize the Debtors to select a stalking horse purchaser and conduct an auction.  ECF 165 in Case No. 16-24498 and ECF 136 in Case No. 16-26458.  The court entered the order authorizing the Debtors to select a stalking horse purchaser on August 15,

3

2017, and entered an amended order on August 16, 2017.  ECF 182, 184 in Case No. 16-24498 and ECF 177 in Case No. 16-26458.

On September 7, 2017, an auction was held and the Debtors determined that Brawner's offer of $3,800,000 was the highest and best offer.  The asset purchase agreement stated that the purchased assets included:

> 2. **PURCHASED ASSETS**: The assets to be sold by Seller and purchased by Purchaser shall consist of and include the following (the "**Purchased Assets**"):
>
> (A) The real property and improvements thereon, all rights and appurtenances of Seller pertaining thereto, including riparian rights and any right, title and interest of Seller in and to adjacent streets, waterways, alleys or rights-of-way and strips and gores between the real property and abutting properties to the extent transferable (the "**Real Property**") more particularly described on attached "**Exhibit A**" and as set forth and shown on an aerial photo / tax map parcel overlay attached as "**Exhibit B**". The Real Property consists of the "**Marina Parcel**."

ECF 235 at p. 28 of 56 in Case No. 16-24498 and ECF 190 in Case No. 16-26458.  Exhibit A does not include a description of Parcel 13, *id*. at p. 40 of 56, nor was it intended to do so.

The current dispute arose subsequent to the auction and prior to the hearing to approve the sale, which was scheduled for September 14, 2017 (the "Sale Hearing").  As a frame of reference, Parcels 23 and 13 sit on three sides of a u-shaped cove off of the Rock Hall Harbor. Parcel 23 sits along the west and south borders of the cove.  Parcel 13 sits along the east border of the cove.  The north end of the cove leads out into the Harbor.

The marina makes a substantial portion of its revenue from leasing boat slips which, for the most part, are connected to piers extending into the water.  The most valuable pier extends out approximately 400 feet from the southern portion of Parcel 23 and sits at the far east side of the cove (the "East Pier").  It runs parallel to Parcel 13, and thus, the east side of the East Pier faces Parcel 13.  At the point where the East Pier is connected to land, the distance between the

4

East Pier and Parcel 13 is about 80 feet or so.  At the far end of the East Pier, the distance between the East Pier and Parcel 13 is more than 100 feet.

The west side of the East Pier has many boat slips and the water is deep enough there to accommodate boats.  The east side of the East Pier does not contain slips, but has one boat lift and many cleats.  Boats tie up there regularly.  The water is deep enough on the east side of the East Pier to accommodate boats for at least approximately half of its 400 foot length.  For example, a 45 foot sailboat was recently docked on the east side of the East Pier.  The aerial photo of the marina attached to the asset purchase agreement shows at least two boats docked on the east side of the East Pier at the time the photo was taken.

The entire East Pier is a valuable, if not the most valuable, component of the marina.  The east side of the East Pier, while not the greatest revenue generating component of the marina, is nonetheless valuable in the operations of the marina.

The East Pier sits in the riparian rights of Parcel 13.  Thus, the marina has used the riparian rights of Parcel 13 for more than thirty years.  There has been no need for formal documentation of this usage, because the Willises are the sole owners of both Sailing and Parcel 13.  Moreover, the border of Parcel 13 that sits along the cove is wetlands and has not been used for any purpose by the Willises.  There could be no question to anyone bidding at the auction of the marina that the full use of and access to the East Pier, both the west and east sides of it, was included in the sale. Thus there could be no question that whatever riparian rights are needed to operate the marina, including the East Pier, were included in the sale.

Prior to the Sale Hearing, the parties attempted to agree to language that resolved the marina's use of Parcel 13's riparian rights.  In Paragraph 15 of a proposed sale order that was uploaded on the morning of the Sale Hearing, the Debtors proposed: "The Willises, as the

5

owners of adjacent Parcel 13, shall execute a binding covenant that they will not exercise waterfront riparian right that interfere with Marina operations." ECF 213 at ¶15 in Case No. 16-24498 and ECF 178 at ¶15 in Case No. 16-26458.

This language was unacceptable to Brawner. It needed the full use of the riparian rights to Parcel 13, just as those rights have been used during the operations of the marina. The full use of those rights is critical to the operation of the marina. For example, in the absence of the rights, repairing or rebuilding the East Pier, which is 30 to 40 years old, could be problematic, as would be dredging both the west and east sides of the East Pier. The absence of those rights could also negatively impact boat access to the east side of the East Pier.

At the Sale Hearing the following colloquy occurred:

[**Counsel for Sailing**]: The principal change in the asset purchase agreement, I think we'll hear from [counsel for Brawner] in more detail, is to the effect that a parcel known as Parcel 13, which is owned by Mr. and Mrs. Willis, is waterfront property immediately adjacent to the marina, and the asset purchase agreement will provide that riparian rights on Parcel 13 will not be asserted, and this will be recorded, in any manner that will interfere with the operation of the marina.

I'm not -- I don't remember much, well, last I heard about riparian rights was in law school, but fortunately, there's an expert in the courtroom on this issue. And the order will provide that the riparian rights will not be asserted on Parcel 13 to in any way impact the operation of the marina, now or in the future.

**The Court**: That is, in the proposed order that was uploaded this morning, it's Paragraph 15. The Willises, as the owners of adjacent Parcel 13, shall execute a binding covenant that they will not exercise waterfront riparian right that interfere with marina operations. I was operating under the assumption, I hope it's correct, that because the Willises are offering this order along with Sailing Emporium, they're agreeing to that.

[**Counsel for Sailing**]: Yes.

**The Court**: Okay.

[**Counsel for Sailing**]: And that language will be tweaked and circulated before it's uploaded.

6

*****

> **The Court**: Are there other changes that -- is it [counsel for Brawner] who's going to go through those?
>
> [**Counsel for Sailing**]: I think he may want to be more detailed. That's the principal change.
>
> **The Court**: Okay, I do want to circle back with you on executory contracts, but if we could hear from [counsel for Brawner] first.
>
> [**Counsel for Brawner**]: Your Honor, that is, in fact, the primary change. The tweak would read, I believe, we've come to an agreement that the language will read as follows for Paragraph 15. *The Willises, as owners of adjacent Parcel 13 shall grant any and all riparian rights they may hold to the Parcel 23/Marina, which documentation shall be recorded in the land records.* That's the primary change.
>
> I believe Paragraph 16 was also changed . . . .
>
> **The Court**: All right, [counsel for the Willises], do the Willises agreed [sic] to that proposed language in Paragraph 15 of the order?
>
> [**Counsel for the Willises**]: Your Honor, I have Mr. Willis sitting in the courtroom today. He's authorized to speak for both Mary Sue Willis and himself. I've just once again inquired, after extended colloquy in the meeting rooms, whether he understands and fully agrees to that, and Mr. Willis is nodding his head at this time in assent, I see that.
>
> **The Court**: All right, I see him nodding his head as well. Thank you, Mr. Willis - - all right . . . .

*See* Sale Hearing Tr., ECF 268 at 14:4-15:5; 15:8-16:18 in Case No. 16-24498 (emphasis added).

The court signed the Sale Order on September 29, 2017. ECF 235 in Case No. 16-24498 and ECF 190 in Case No. 16-26458. Paragraph 15 of the Sale Order matches the language stated at the hearing by Brawner's counsel. It states:

> 15. <u>Noninterference with Marina Operations</u>. The Willises, as the owners of adjacent Parcel 13, shall grant and convey any and all riparian rights they hold to Parcel 23 and the Marina, which documentation shall be recorded in the land records.

*Id.* at ¶15.

**Conclusion of Law**

The parties dispute the meaning of Paragraph 15 of the Sale Order. The Willises contend that they agreed only that they would not exercise the riparian rights to Parcel 13 in a way that interferes with the marina operations. Brawner contends that the Willises agreed to transfer to it all of the riparian rights to Parcel 13.

The resolution of the dispute requires the court to interpret Paragraph 15 of its Sale Order. As the United States District Court for the District of Maryland stated in *Reaching Hearts Int'l, Inc. v. Prince George's Cty.*, 831 F. Supp. 2d 871, 879 (D. Md. 2011), "[t]he Fourth Circuit is highly deferential to a district court's decision on the meaning of its own order "because district courts are in the best position to interpret their own orders." *Id.* (quoting *JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.*, 359 F.3d 699, 705 (4th Cir. 2004)); *see also Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 940 (4th Cir. 1997) ("The bankruptcy court [is] 'in the best position to interpret its own orders.'").

"When an order is ambiguous, a court "must construe its meaning, and in so doing may resort to the record upon which the judgment was based." *In re Tomlin*, 105 F.3d at 940 (quoting *Spearman v. J & S Farms, Inc.*, 755 F. Supp. 137, 140 (D.S.C. 1990)); *see also Security Mut. Casualty Co. v. Century Casualty Co.*, 621 F.2d 1062, 1066 (10th Cir. 1980) ("If there is any ambiguity or obscurity or if the judgment fails to express the rulings in the case with clarity or accuracy, reference may be had to the findings and the entire record for the purpose of determining what was decided."). Ultimately, the court's responsibility is "to construe a judgment as to give effect to the intention of the court, not to that of the parties." *Ford Motor Co. v. Summit Motor Prods., Inc.,* 930 F.2d 277, 286 (3d Cir.1991) (quoting *United States v.*

*60.22 Acres of Land, More or Less, Situate in Klickitat County,* 638 F.2d 1176, 1178 (9th Cir. 1980)).

The court first concludes that Paragraph 15 is not ambiguous. It is a straightforward declaratory statement: "The Willises, as the owners of adjacent Parcel 13, shall grant and convey any and all riparian rights they hold to Parcel 23 and the Marina, which documentation shall be recorded in the land records." ECF 235 at ¶15. It means what it says—the Willises, as owners of Parcel 13, are conveying to Parcel 23 and the marina any riparian rights to Parcel 13. The language was read into the record at the sale hearing by Brawner's counsel, and was agreed to by all parties, including Mr. Willis.

The Willis's interpretation is unreasonable. They say they understood the phrase "any and all riparian rights they hold to Parcel 23 and the Marina" as a single phrase, with the word "to" linked to "riparian rights." In their view, they agreed to transfer whatever riparian rights they held in Parcel 23 to Brawner to ensure those rights do not cause interference with the operations of the marina, as the heading of Paragraph 15 states. But this interpretation is unreasonable and unconvincing.

First, the Willis held no riparian rights to Parcel 23; that parcel is owned by Sailing. They had no authority to convey to anyone the riparian rights to Parcel 23. Second, Brawner was already obtaining all of the riparian rights to Parcel 23 by acquiring Parcel 23 itself. There would be no need for the Willises to convey any riparian rights associated with Parcel 23 because those would be transferred in the sale of Parcel 23. Third, it ignores the phrase "as owners of Parcel 13." There would be no need to state that the Willises are acting "as owners of Parcel 13" if they were somehow conveying the Parcel 23 riparian rights. Fourth, under the

9

Willises' interpretation, they are not conveying the rights to anyone, because in their view the word "to" applies to "riparian rights" rather than "transfer."

Moreover, the language in Paragraph 15 of the proposed sale order uploaded by the Debtors on the morning of the Sale Hearing stated exactly what the Willises contend the final Paragraph 15 is intended to mean: "The Willises, as the owners of adjacent Parcel 13, shall execute a binding covenant that they will not exercise waterfront riparian rights that interfere with marina operations." ECF 213 at ¶15 in Case No. 16-24498 and ECF 178 at ¶15 in Case No. 16-26458. This language was rejected by Brawner, and the parties agreed to the final language in Paragraph 15 at the Sale Hearing. Thus, the final Paragraph 15 must mean something different than the language offered by the Debtors in the proposed sale order.

Having concluded the order is unambiguous, the court need not resort to the record upon which the order was based to construe its meaning. *In re Tomlin*, 105 F.3d at 940. Nevertheless, if the court were to conclude that the language is ambiguous, the court would reach the same result by reference to the record.

"[A] court decree or judgment 'is to be construed with reference to the issues it was meant to decide.'" *United States v. Spallone*, 399 F.3d 415, 424 (2d Cir. 2005) (quoting *Mayor & Aldermen of City of Vicksburg v. Henson*, 231 U.S. 259, 269 (1913)). Any ambiguity in the order may be resolved by reference to the relief sought by the parties. *See id.* at 424 ("[A] court is presumed not to intend to grant relief which was not demanded.") (quoting *Harrigan v. Mason & Winograd, Inc.*, 397 A.2d 514, 516 (R.I. 1979)); *see also EarthGrains Baking Companies, Inc. v. Sycamore*, No. 15-4145, 2017 WL 4518664, at *5 (10th Cir. Oct. 10, 2017).

The matter before the court at the Sale Hearing was whether to approve the sale of the marina assets that were the subject of the auction. The East Pier of the marina sits in the riparian

rights to Parcel 13, and those rights have been used in the operation of the marina for more than 30 years. Any buyer of the marina assets would have understood that it was buying all rights used in the operation of the marina. This is especially true of all rights associated with the East Pier, considering its importance to the operation of the marina. The riparian rights to Parcel 13 were implicitly included in the auction.

Finally, in the motion to enforce Paragraph 15, the Willeses appear to challenge the authority of Mr. Willis to act on behalf of Mrs. Willis and her estate at the Sale Hearing. Because of her illness, Mrs. Willis gave Mr. Willis a power of attorney dated August 3, 2017, to, among other things, dispose of all of her property. The court is informed that the United States Trustee approved the power of attorney in light of Mrs. Willis's illness and because the Willises are married, they jointly own assets and they share the same liabilities. At the November 20 hearing, Mrs. Willis testified that she revoked the power of attorney in favor of Mr. Willis and instead gave it to her son, Tom, but she could not remember when she did so. A person identified as Tom Willis was in the courtroom at the beginning of the hearing, but left just before Mrs. Willis's testimony. Thus, there is no testimony in the record as to when the power of attorney in favor of Mr. Willis was revoked, and the court finds it was not revoked prior to the Sale Hearing. Therefore, Mr. Willis had the authority to bind Mrs. Willis's estate at the sale hearing. If the Willises sought a different factual finding or conclusion, it would have been a very simple matter for Tom Willis to testify to the actual date, rather than leave a hearing that was going to determine the disposition of rights over which he purportedly holds a power of attorney.

In any event, the court would not accept a power of attorney that puts a nondebtor in control of the assets of Mrs. Willis's estate. A debtor-in-possession is a fiduciary of the estate

11

and cannot transfer that responsibility to a nondebtor, and certainly not without court approval. Any purported power of attorney over estate assets in favor of Tom Willis, which has not even been submitted in the record, would be an unauthorized post-petition transfer and of no force or effect.

## Conclusion

For the foregoing reasons, the court concludes that Paragraph 15 requires that the Willises, as owners of Parcel 13, will transfer Parcel 13's riparian rights to Brawner. The court will deny the motion.

cc:   The Sailing Emporium, Inc.
P. O. Box 597
Rock Hall, MD 21661

Lisa Yonka Stevens
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, MD 21044

James A. Vidmar, Jr.
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, MD 21044

Gerard R. Vetter
Office of the US Trustee
101 W. Lombard Street
Suite 2625
Baltimore, MD 21201

Mary Sue Willis
4324 Eastern Neck Rd
Rock Hall, MD 21661

William Arthur Willis
4324 Eastern Neck Rd
Rock Hall, MD 21661

John Douglas Burns
The Burns LawFirm, LLC

6303 Ivy Lane, Ste. 102
Greenbelt, MD 20770

Brawner Company, Inc.
c/o John T. Farnum
Linowes and Blocher LLP
Suite 800
Bethesda, MD 20814

The Peoples Bank
c/o Adam M. Lynn
McAllister, DeTar, Showalter & Walker
100 N. West Street
Easton, MD 21601

**End of Memorandum of Decision**